**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
                      :

**BOSE OGBEBOR and ALICE**   :
**OMORGIE**,                         :
                             :
       Plaintiffs,             :
                             :      Civ. Action No.: 16-3400 (FLW) (DEA)
v.                            :
                             :            **OPINION**
**J.P. MORGAN CHASE, N.A., M&T**   :
**BANKING, and BAYVIEW LOAN**   :
**SERVICING**,                  :
                             :
       Defendants.        :
———————————————————:

<u>**WOLFSON**, **United States District Judge**</u>:

Plaintiffs Bose Ogbebor ("Ogbebor") and Alice Omorgie ("Omorgie") (collectively, "Plaintiffs") filed their Complaint asserting various state and federal claims arising from an underlying New Jersey foreclosure action that resulted in the involuntary sale of Plaintiffs' residence. Presently before the Court are two separate motions to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), filed by defendant J.P. Morgan Chase, N.A. ("Chase") and defendants M&T Banking ("M&T") and Bayview Loan Servicing ("Bayview") (collectively, the "M&T Defendants"), respectively. Based on the judgment of foreclosure in the state court, Defendants contend that Plaintiffs' Complaint is barred by the Rooker-Feldman doctrine, the New Jersey entire controversy doctrine, res judicata and collateral estoppel. For the reasons set forth below, Chase's motion to dismiss is **GRANTED**, and Plaintiffs' claims for breach of contract in Count One, violations of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J. Stat. Ann. 56:8-1, <u>et</u> <u>seq.</u>, in Count Two and fraudulent misrepresentation in Count

1

Four are **DISMISSED** as to Chase.  The M&T Defendants' motion to dismiss Plaintiffs' claim for violations of the Real Estate Settlement Procedure Act ("RESPA") against the M&T Defendants in Count Three is **DENIED**.  To the extent that Count Two asserts a NJCFA claim against M&T for conduct that predates the state court judgment of foreclosure, that claim is dismissed, but Plaintiffs are given leave to file an Amended Complaint to assert an NJCFA claim against M&T and/or Bayview for conduct post the foreclosure judgment, within 15 days from the date of the Order accompanying this Opinion.

# I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

On April 25, 2007, Plaintiffs executed a mortgage to secure a $358,000 loan from Chase for the purchase of a property located at 15 Riddle Avenue, Hampton, New Jersey 08827 (the "Residential Property").  Compl., ¶¶ 8, 2.  From 2007 through 2011, Plaintiffs resided at the Residential Property until Hurricane Irene left the residence uninhabitable.  Id. at ¶ 10.  After the hurricane, Plaintiffs moved into another residence with their relatives, while the Residential Property remained vacant.  Id.  Because of financial strain, Plaintiffs allege that they defaulted on their mortgage payments to Chase in November 2011.  Id. at ¶ 21.  Several months later, in

---

[1] On these motions, Plaintiffs' allegations in the Complaint will be accepted as true.  Furthermore, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings…. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and citation omitted) (alteration in original); see also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993) (stating that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (internal quotation marks and citation omitted).  Here, Plaintiffs' Complaint alleges misconduct by Defendants in the servicing of Plaintiffs' mortgage, including the institution of a foreclosure action in New Jersey Superior Court.  Defendants have attached various court documents related to that state court foreclosure action.  Thus, this Court will consider those documents integral to the allegations in the Complaint.

February 2012, Plaintiffs submitted a mortgage modification application to Chase.  Id. at ¶ 13.

Chase sent Plaintiffs a letter confirming receipt of the application, but Chase allegedly sent another

letter stating that it could not locate Plaintiffs' mortgage modification application and requested

that Plaintiffs submit a new request.  Id. at ¶¶ 13-14.  Plaintiff resubmitted their loan modification

request to Chase in March 2012.  Id. at ¶ 15.

At some time before June 2012, Plaintiffs called Chase to inquire about the status of their

pending mortgage modification application.   Id. at ¶ 16.   Plaintiffs allege that, during that

conversation, a Chase representative told Plaintiffs that they must transfer title of Plaintiffs' rental

property, located at 82 Willoughby Street, Newark, New Jersey 07112 (the "Rental Property"), to

Chase in order to secure a loan modification on the Residential Property.  Id. at ¶ 17.  The mortgage

for the Rental Property was also held by Chase.[2]  Id. at ¶ 21.  John Rieger ("Rieger"), a Vice

President at Chase, subsequently sent Plaintiffs a letter, dated June 1, 2012, which stated: "Thank

you for talking to us about the opportunity to eliminate your mortgage debt and avoid foreclosure.

As we discussed, once the release of your property to Chase is complete, you will owe nothing

more on your mortgage and will receive modification on the other."[3]  Id. at ¶ 18, Ex. A.  Plaintiffs

allege that they accepted Chase's offer of settlement when Plaintiffs "completed and returned by

---

[2] From the Complaint, it is unclear whether both Plaintiffs executed the mortgage to secure a loan on the Rental Property.  Indeed, the allegations in connection with that property are scant. However, the Court is able to glean the following information from the Complaint:  Plaintiffs allege that they defaulted on their mortgage payments on the Rental Property in November 2011, and Chase filed a foreclosure complaint on October 2013 – approximately one year after Chase initiated the foreclosure proceeding on the Residential Property.  Id. at ¶¶ 21, 50.

[3] Plaintiffs allege that, at the time Rieger sent the letter, they "were approximately seven (7) months behind on the Chase mortgage on the Rental Property, which amounted to approximately $7,700 in arrears.  Plaintiffs were also approximately seven (7) months behind on the Chase mortgage on the [Residential Property], which amounted to approximately $22,000 in arrears."  Id. at ¶ 21.

fax to Chase all forms requested by Chase in order to relinquish title to the Rental Property to Chase in exchange for a modification of the mortgage on the [Residential Property]."  Id. at ¶ 19.

In August 2012, Plaintiffs called Chase to inquire about "the status of both the deed-in-lieu for the Rental Property and the modification of the [Residential Property's] mortgage."  Id. at ¶ 29.  Plaintiffs claim that a Chase representative told them that "their modification application had become stale and that an updated application was required."  Id. at ¶ 30.  Thereafter, Plaintiffs submitted an updated application in September 2012.  Id.  Nevertheless, in October 2012, Chase allegedly contacted Plaintiffs and requested another application, and Plaintiffs once again complied.  Id. at ¶ 31.  Over the next couple of months, Plaintiffs claim that "[they] were in constant contact with Chase regarding the status of the modification applications and the additional documents that either needed to be updated or resubmitted per Chase's request," id. at ¶ 34, but Plaintiffs maintain that Chase failed to advise them of the state court action seeking to foreclose on the Residential Property.  Id. at ¶ 35.

On October 10, 2012, Chase filed its foreclosure complaint against both Plaintiffs in the New Jersey Superior Court.  Id. at ¶ 32; see Declaration of Michael Trainor, Esq. ("Trainor Decl."), Ex. B.  When Plaintiffs failed to answer the foreclosure complaint, the state court entered default against Plaintiffs on December 31, 2012.  See Compl., Ex. A.  Plaintiffs allege that, on February 6, 2013, "[they] reviewed the Court Docket at the Superior Court of New Jersey," and discovered that the state court had entered default against them.[4]  Id. at ¶ 41.  According to Plaintiffs, "[t]his was the first time [they] became aware of the existence of the foreclosure action."  Id. at ¶ 42.  The

---

[4] In their Complaint, Plaintiffs allege that the state court entered "default judgment" on December 31, 2012.  See id. at ¶ 41.  However, the docket in the foreclosure action provides that the state court only entered default against Plaintiffs.  See Trainor Decl., Ex. B.

following day, Plaintiffs filed a motion to vacate default, but the state court rejected that motion "for non-conformance on February 27, 2013." Id. at ¶ 43. On April 3, 2013, Chase moved for final judgment, and because the motion was uncontested, the state court entered judgment against Plaintiffs on May 1, 2013, and scheduled the Sheriff's Sale for August 31, 2013. Id. at ¶¶ 44-45.

Plaintiffs filed another motion to vacate judgment on June 5, 2013. Id. at ¶ 46. That motion contained a proposed answer to Chase's foreclosure complaint, which stated that Plaintiffs had "been diligently trying to apply for a loan modification with [Chase]," but Chase "is [attempting] to deny [Plaintiffs] the opportunity to seek the foreclosure alternative program available." See Trainor Decl., Ex. C. It further stated that Chase "acted in an unfair and deceptive manner, withholding foreclosure intent from [Plaintiffs]. Made false promise and misrepresentation about modifying [the] loans when it had no intention of doing so." Id. Furthermore, with respect to the proposed affirmative defenses, Plaintiffs asserted that Chase violated the "New Jersey Consumer Act." Id. The state court denied the motion to vacate judgment on July 23, 2013, and issued a written memorandum opinion. Id. at ¶ 46; see Declaration of James Berg, Esq. ("Berg Decl."), Ex. B. In that decision, despite Plaintiffs' argument to the contrary, the state court found that "[Plaintiffs] were fully aware of the pending foreclosure and during their pursuit of a possible modification consciously chose not to file an answer and instead allowed the foreclosure to proceed uncontested." Berg Decl., Ex. B. In addition, the court concluded that, although Plaintiffs asserted "some defenses that purport to challenge [Chase's] standing, [those defenses] are not sufficiently supported to effectively question [Chase's] foreclosure and subsequently obtained judgment." Id.

After the motion to vacate the foreclosure judgment was denied, in early 2014, M&T "became successor-in-interest to [Chase] with respect to the servicing of Plaintiffs' mortgage loan"

on the Residential Property.  Compl., ¶¶ 4, 51.  At around the same time, Bayview assumed the responsibility of servicing agent for M&T.  Id. at ¶¶ 5, 51.  After the M&T Defendants started servicing Plaintiffs' mortgage, Plaintiffs claim that they "submitted a new loan modification application to Bayview in March 2014."  Id. at ¶ 52.  On October 1, 2014, however, Chase purchased the Residential Property for $100 at the Sheriff's Sale.[5]  Id. at ¶ 53.  Although not alleged in the Complaint, on December 8, 2014, Plaintiffs filed a motion to set aside the sale of the Residential Property in state court.  See Trainor Decl., Ex. B.  That motion was denied on January 13, 2015, and the state court order was accompanied by a memorandum opinion.  Id. at Ex. D.  In that opinion, the state court first concluded that "[Plaintiffs] were fully aware of the foreclosure process throughout the relevant time period, regardless of the manner in which they were served with notice."  Id. at Ex. A.  The court further concluded, "[Plaintiffs'] primary argument is that they had a pending loan modification review at the time of sale.  However, there is no right to a loan modification under New Jersey law."  Id.  Critically, when confronted with the argument that Chase acted in a fraudulent manner, the state court made the following determination: "The record does not support the [Plaintiffs'] claim that they were coerced into loan modification negotiations, or that this was done fraudulently."  Id.  Instead, the court found that "[i]t is undisputed that [Plaintiffs] failed to pay on their obligation, ultimately permitting [Chase] to force the sale of the property to satisfy such obligation."  Id.  After that motion was denied, Plaintiffs did not file an appeal to the New Jersey Appellate Division from the state court foreclosure action judgment.  Compl., ¶ 47.  Plaintiffs claim that they "were dissuaded from appealing the Court's decision by counsel and by counsel for Chase, who assured Plaintiffs that a

---

[5] The state court adjourned the Sheriff's Sale on ten occasions to allow the parties to negotiate a loan modification.  See Trainor Decl., Ex. A.

modification would be forthcoming and that no action to sell the [Residential Property] would proceed." Id.

After the motion to set aside the sale of the property was denied, Plaintiffs' eviction was scheduled for February 2, 2015. Five days prior to the eviction, however, Ogbebor filed a Chapter 13 petition in the United States Bankruptcy Court for the District of New Jersey. On May 11, 2015, Ogbebor filed an adversary proceeding in the Bankruptcy Court, asserting various state and federal claims against Chase, M&T and Bayview based on nearly identical allegations as the instant Complaint. See Berg Decl., Ex. E. In that proceeding, Chase filed a motion to dismiss, and the Bankruptcy Court issued a written opinion denying, in part, the motion.[6]  See In re Ogbebor, No. 15-11420, 2015 WL 5177739, at *1 (Bankr. D.N.J. Sept. 3, 2015). On March 28, 2016, the adversary proceeding was terminated when the main bankruptcy petition was dismissed.

On June 10, 2016, Ogbebor and Omorgie filed the instant Complaint. In Count One, Plaintiffs assert a breach of contract claim against Chase because "Plaintiffs and Chase entered into a written Agreement whereby Plaintiffs agreed to convey their interest in a separate Rental Property to Chase, and in exchange Chase agreed not to initiate a foreclosure action against Plaintiffs' [Residential Property] and grant her a modification of her mortgage loan for that property." See id. at ¶ 57. However, Plaintiffs' claim that "Chase breached the contract by surreptitiously commencing foreclosure proceedings against Plaintiffs and failing to provide her with a mortgage modification despite Plaintiffs' acceptance of and full performance under the Agreement." Id. at ¶ 60. With respect to the relief sought, Plaintiffs allege that they are entitled to $269,500 in ascertainable losses because, "[i]n reliance on the June 2012 Agreement, Plaintiffs

---

[6] The claims asserted in the adversary proceeding, as well as the Bankruptcy Court's decision, will be discussed, infra.

declined the pending offer for sale on the Rental Property and forewent the opportunity to sell the Rental Property at market value," thereby depriving Plaintiffs of "approximately $60,000 in lost equity." See id. at ¶ 61.  Additionally, Plaintiffs allege that they invested approximately $209,500 into "an addition, alterations, repairs, and renovations" on the Residential Property.  Id. at ¶ 62.

In Count Two, Plaintiff allege that Chase and M&T violated the NJCFA, because "Chase induced Plaintiffs to enter into the June 2012 Agreement by affirmatively representing to Plaintiffs that [Chase] would not initiate and prosecute a foreclosure and would grant Plaintiffs a loan modification if Plaintiffs conveyed their interest in [the Rental Property to Chase]."  Id. at ¶ 67. However, Plaintiffs claim that various Chase representatives, including Rieger, made false or misleading statements to Plaintiffs "that Chase would not foreclose on either the Rental Property or the [Residential Property], when in fact Chase was continuing its foreclosure and collection activities full bore."  Id. at ¶¶ 68-69.  Furthermore, Plaintiffs allege that Chase and M&T purposefully delayed the loan modification process by "repeatedly request[ing] multiple submissions of information and documentation from Plaintiffs, claiming that the information was lost or never received."  Id. at ¶ 72.  According to Plaintiffs, "Chase and M&T Bank never intended to provide Plaintiffs with a mortgage modification and Chase never intended to honor its agreement with Plaintiffs and thus all representations made to Plaintiffs by Chase and/or M&T Bank were false and Defendants, and each of them, new [sic] them to be false."[7]  Id. at ¶ 73.  As a

---

[7] In this Count, Plaintiffs' allegations against M&T appear to concern the loan modification application on the Residential Property that occurred prior to the issuance of the foreclosure judgment.  Somewhat inconsistently, Plaintiffs also allege that M&T did not become the servicer on the Residential Property mortgage until 2014, which is after the state court entered the foreclosure judgment.  The significance of this apparent inconsistency will be discussed, infra.

result, Plaintiffs assert that they "have suffered an ascertainable loss in the amount equal to $269,500," id. at ¶ 74, as well as treble damages, attorneys' fees and costs.  Id. at ¶ 75.

In Count Three, Plaintiffs assert a claim against the M&T Defendants under RESPA, alleging that Plaintiffs "submitted a loss mitigation application... to Defendant M&T's servicing agent, Defendant Bayview Loan Servicing," see id. at ¶ 77, but "[w]hile Plaintiffs' loss mitigation application was still under review, Defendants M&T and Bayview, both scheduled and conducted a Sheriff's Sale of Plaintiff's [Residential Property] in October 2014."[8]  Id. at ¶ 79.  Moreover, Plaintiffs allege that the M&T Defendants "did not send Plaintiffs a notice that they were not eligible for any loss mitigation option prior to conducting the foreclosure sale."  Id. at ¶ 83.  Indeed, Plaintiffs claim that, "[a]t the time of the October 2014 Sheriff's Sale, [they] had not been offered any loss mitigation options to either accept or reject."  Id. at ¶ 84.  Based on these alleged violations of RESPA, Plaintiffs assert that they "are entitled to actual damages, statutory damages, and reasonable attorneys' fees.  Id. at ¶ 86.

In Count Four, Plaintiffs bring a claim against Chase for fraudulent misrepresentation. Similar to their claim under the NJCFA, Plaintiffs allege that Chase made false statements to Plaintiffs in order to mislead them into thinking that the parties had entered into an agreement to restructure Plaintiffs' mortgage on the Residential Property, but Chase had actually initiated a foreclosure action in state court.  See id. at ¶¶ 88-92.  Because Plaintiffs relied on Chase's misleading statements, see id. at ¶ 93, "Plaintiffs suffered damages, including but not limited to, a loss in equity in the Rental Property; costs incurred to repair and renovate the [Residential

---

[8] This type of claim is sometimes referred to as "dual tracking."  See Gresham v. Wells Fargo Bank, N.A., 642 Fed. Appx. 355, 359 (5th Cir. 2016) ("Dual tracking is the term given to situations in which the lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options.").

Property]; service charges, late fees, legal fees, valuation fees, inspection fees and delinquent tax fees assessed against Plaintiffs during the relevant time period; deterrence from seeking other remedies to address their default and/or mortgage payments; and damage to credit."  Id. at ¶ 94.

On July 8, 2016, the M&T Defendants filed their motion to dismiss, and Chase filed a separate motion to dismiss on July 22, 2016.  Plaintiffs have opposed both motions.

## II.   LEGAL STANDARD

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the… claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555.  The complaint must include "enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Phillips, 515 F.3d at 234 (internal quotation marks and citation omitted); Covington v. Int'l Ass'n of

Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (internal quotation marks and citation omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations marks and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. (internal quotation marks omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks and brackets omitted).

## III.    DISCUSSION

In this matter, while there are two separate motions to dismiss, all of the Defendants contend that Plaintiffs' Complaint is barred by the Rooker-Feldman doctrine, the New Jersey entire controversy doctrine, res judicata and collateral estoppel.[9]  Distilled to its essence, Defendants argue that Plaintiffs are attempting to relitigate the underlying state court foreclosure action because they are dissatisfied with the result of that proceeding. In response, Plaintiffs argue that their claims are not barred, since the Complaint asserts claims arising from Defendants' breach of a loan modification agreement and their deceptive and fraudulent conduct, which is unrelated to

---

[9] To the extent that any of the defendants assert arguments unique to that particular party, the Court will address those arguments separately, infra.

11

the state court foreclosure judgment.  In addition, Plaintiffs reason that their claims are not germane to the foreclosure action because they do not relate to the mortgage itself.

### a.      Rooker-Feldman Doctrine

### 1.       <u>The Adversary Proceeding in Bankruptcy Court</u>

In January 2015, Ogbebor file a Chapter 13 petition in the Bankruptcy Court, and, shortly thereafter, she filed an adversary complaint, asserting nearly identical claims as the instant Complaint.[10]  <u>See</u> Berg Decl., Ex. E.  However, there is one major difference: in the adversary proceeding, Ogbebor specifically requested that the Bankruptcy Court invalidate the Sheriff's Sale and reinstate the mortgage in the adversary proceeding.  <u>Id.</u>  In response, Chase filed a motion to dismiss Ogbebor's adversary complaint, and the Bankruptcy Court issued a written decision, dated September 3, 2015.  <u>See</u> <u>In re Ogbebor</u>, 2015 WL 5177739, at *1.  Here, without providing any authority to support such an argument, Plaintiffs request that this Court adopt the conclusion of the Bankruptcy Court that the Rooker-Feldman doctrine does not operate to bar Plaintiffs' claims.[11]

---

[10] In the first count, Ogbebor alleged that Chase breached a loan modification agreement with Ogbebor, because Chase foreclosed on the Residential Property instead of honoring the agreement to accept the title to the Rental Property in exchange for a loan modification with respect to the Residential Property.  <u>See</u> Berg Decl., Ex. E.  In the second count, Ogbebor claimed that Chase and M&T Bank violated the NJCFA when representatives from those entities made false or misleading statements to Ogbebor about the status of her loan modification.  <u>Id.</u>  In the third count, Ogbebor sought injunctive and declaratory relief against Chase and M&T, specifically requesting that "the foreclosure sale on October 1, 2014 be set aside and the property returned to Plaintiff and the mortgage reinstated consistent with the terms of the agreement of the parties."  <u>Id.</u>  In the final count, Ogbebor asserted a claim against the M&T Defendants for violation RESPA, alleging that those entities arranged and conducted a Sheriff's Sale while there was a pending loss mitigation application.

[11] To be clear, the Bankruptcy Court considered whether the aforementioned doctrines barred claims against Chase only, not the M&T Defendants.  Of note, that court did not consider whether the New Jersey entire controversy doctrine was applicable.

In connection with Chase's motion, the Bankruptcy Court stated, "turn[ing] to Defendant's arguments with respect to both the *Rooker Feldman* doctrine and *res judicata*/ collateral estoppel defenses[,] [t]he Court disagrees, in part, with Defendants proposed application of these defenses," i.e., that Ogbebor's claims were barred.  In re Ogbebor, 2015 WL 5177739, at *4 (emphasis in the original).  The court reasoned:

> While this Court must and should respect these factual findings, to which there has been no appeal taken, the Court is also cognizant that these determinations were made in the context of deciding Plaintiffs motion to set aside the sheriff's sale.  In order to be successful, Plaintiff had to meet a substantially higher threshold of proofs than required in her present adversary complaint.  In point of fact, New Jersey case law is clear that while the Chancery Division has the inherent authority to vacate a sheriff's sale, within the Court's discretion, First Trust National Assoc. v. Merola, 319 N.J. Super. 44, 49 (App. Div. 1999), such relief should be granted only in the rarest instances when it is necessary for compelling reasons to remedy a plain injustice.  See E. Jersey Sav. & Loan v. Shatto, 226 N.J. Super. 473, 476 (Ch. Div. 1987); Karel v. Davis, 122 N.J. Eq. 526, 529 (E. & A. 1937).  A judicial sale may be set aside based on fraud, accident, surprise, mistake, irregularities in the conduct of the sale, or for several other equitable considerations.  U.S. Bank Nat. Assn v. Rodriguez, 2013 WL 238179, at *2 (N.J. Super. Ct. App. Div. Jan. 23, 2013).   Judge Coleman's determination that no such circumstances or considerations warranted the grant of such extraordinary relief as vacating a sheriff's sale, does not mean necessarily that Plaintiff could not successfully make out claims for either breach of contract or violation of the NJ Consumer Fraud Act.  The motion before Judge Coleman was one of limited scope and did not require Judge Coleman to address all of the issues raised in Plaintiff's Amended Complaint.

Id.  Although the Bankruptcy Court found that the Rooker-Feldman doctrine was inapplicable, it concluded that the doctrine of collateral estoppel barred the claim for injunctive and declaratory relief, because "all of the elements for the application of collateral estoppel have been met…."  Id. at *5.  The court explained that it "will not undertake to vacate the sheriff's sale where the equities do not warrant such relief."   Id.   With respect to the remaining claims against Chase, the Bankruptcy Court concluded that Ogbebor "alleged the **bare minimum** of facts needed to establish a breach of contract claim" against Chase, id. at *3 (emphasis in the original), but the court dismissed the NJCFA claim because Ogbebor only asserted conclusory allegations that Chase's

13

conduct was either fraudulent or deceptive.  Id. at *3-4.  Ogbebor was granted leave to amend her complaint to address the deficiencies of the NJCFA claim.  Id.

Plaintiffs argue that, under the doctrine of issue preclusion, the Bankruptcy Court's decision on the Rooker-Feldman issue prevents Defendants from relitigating that issue here. Generally speaking, a plaintiff is precluded from relitigating a certain claim or issue that was actually raised, or should have been raised, during the former action before a court of competent jurisdiction.  See Great W. Min. & Mineral Co. v. ADR Options, Inc., 882 F. Supp. 2d 749, 760 (D.N.J. 2012), aff'd, 533 Fed. Appx. 132 (3d Cir. 2013) ("Res judicata encompasses two preclusion concepts—issue preclusion, which forecloses litigation of a litigated and decided matter often referred to as direct or collateral estoppel, and claim preclusion, which disallows litigation of a matter that has never been litigated but which should have been presented in an earlier suit.") (internal quotation marks and citation omitted).  However, when a court of competent jurisdiction decides an issue of law or fact, it is possible for a defendant to be precluded from raising an argument in a subsequent action that seeks to relitigate the issue decided in a prior action.  See Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency, 126 F.3d 461, 475 (3d Cir. 1997) ("The doctrine of collateral estoppel prevents the relitigation of issues that have been decided in a previous action.").  Four requirements must be satisfied in order for the doctrine to attach: (i) the issue sought to be precluded must be the same one involved in the prior action; (ii) the issue was fully and fairly litigated; (iii) the issue was determined by a final and valid judgment; and (iv) the determination must have been essential to the prior judgment.  Peloro v. United States, 488 F.3d 163, 174-175 (3d Cir. 2007) (stating that a bankruptcy court decision can bar an issue in a subsequent district court proceeding when the requirements of issue preclusion are present); see Katchen v. Landy, 382 U.S. 323, 334 (1966) ("The normal rules of res judicata and collateral

estoppel apply to the decisions of bankruptcy courts."); see also Bd. of Trustees v. Centra, 983 F.2d 495, 505-506 (3d Cir. 1992).

In this matter, the first and second requirements of the issue preclusion doctrine are met. After Ogbebor filed her adversary complaint, Chase argued that Ogbebor's claims were barred under the Rooker-Feldman doctrine, based on the state court judgment of foreclosure. The Bankruptcy Court disagreed with Chase. When Plaintiffs filed nearly identical claims in the instant Complaint, Chase asserted the same Rooker-Feldman argument in its defense. Thus, the issue of Rooker-Federal decided in the Bankruptcy proceeding is the same issue in this matter. Moreover, that issue was actually litigated in the adversary proceeding before the Bankruptcy Court, since Chase raised the defense in its motion to dismiss, and the Bankruptcy Judge issued a written decision that concluded that the Rooker-Feldman doctrine was inapplicable. See In re Ogbebor, 2015 WL 5177739, at *4. Thus, the first and second requirements are easily satisfied, and the issue of preclusion distills to whether the Bankruptcy decision is a final valid judgment.

The Third Circuit has explained that, "[u]nlike claim preclusion, the effectiveness of issue preclusion…, does not require the entry of a judgment, final in the sense of being appealable." In re Brown, 951 F.2d 564, 569 (3d Cir. 1991); see Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1233 n.8 (3d Cir. 1995). Rather, "the doctrine of collateral estoppel applies whenever an action is sufficiently firm to be accorded conclusive effect." In re Brown, 951 F.2d at 569 (internal quotation marks and citation omitted); see Free Speech Coalition, Inc. v. Attorney Gen. of U.S., 677 F.3d 519, 541 (3d Cir. 2012) ("There is no bright-line rule regarding what constitutes a 'final judgment' for issue preclusion."). The Third Circuit has articulated several factors to determine whether a prior judgment is sufficiently firm, including "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could

15

have been, or actually was, appealed." In re Brown, 951 F.2d at 569; see In re Docteroff, 133 F.3d 210, 216 (3d Cir. 1997) (stating that a judgment is not sufficiently final when the prior court "gave insufficient consideration to the issue…."); see also Walters v. Tehrani, No. 13-6544, 2015 WL 1815510, at *12 (D.N.J. Apr. 21, 2015), aff'd sub nom., In re Walters, 649 Fed. Appx. 273 (3d Cir. 2016).

In the prior Bankruptcy proceeding, while the court found that the state court applied a stricter standard with respect to the motion to set aside the sale of the Residential Property, as opposed to the less rigorous standard on a motion to dismiss, missing from the decision is the applicable standard under the Rooker-Feldman doctrine, and any analysis as to why that doctrine did not apply to bar Ogbebor's claims against Chase. See In re Brown, 951 F.2d at 570 (stating that a reasoned opinion must reflect "an appreciation of the relevant facts and familiarity with the applicable law."); see, e.g., Braden v. City of Philadelphia, No. 98-2718, 1999 WL 126929, at *1 (E.D. Pa. Mar. 9, 1999) (concluding that the prior judgment was not final because the "decision was not a reasoned one, grounded in material fact and law."). Indeed, the Bankruptcy Court's decision in that regard was cursory. The only statement that the Bankruptcy Court made as to the issue of Rooker-Feldman is that the court disagreed with Chase's argument that the Rooker-Feldman doctrine barred Ogbebor's claims. The Bankruptcy Court then went on to analyze the doctrine of collateral estoppel. Because there is no analysis in regard to the application of the Rooker-Feldman doctrine, it is difficult for this Court to determine whether the Bankruptcy Court gave sufficient consideration to the issue. See In re Brown, 951 F.2d at 569; see also In re Docteroff, 133 F.3d at 216. In sum, this Court concludes that the Bankruptcy Court's decision on this issue is not sufficiently firm to be accorded conclusive effect in the instant matter. Id.

Accordingly, the doctrine of collateral estoppel does not preclude Chase from arguing that the Rooker-Feldman doctrine bars Plaintiffs' claims.

      1.    **Substantive Analysis of the Doctrine**

Defendants' first contention is that this Court lacks subject matter jurisdiction to hear Plaintiffs' claims under the Rooker-Feldman doctrine. "The Rooker-Feldman doctrine strips federal courts of jurisdiction over controversies that are essentially appeals from state-court judgments." Williams v. BASF Catalysts LLC, 765 F.3d 306, 315 (3d Cir. 2014) (internal quotation marks and citation omitted). Stated differently, "Rooker-Feldman… is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. (internal quotation marks and citation omitted); see Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

In order for the Rooker-Feldman doctrine to deprive a federal court of subject matter jurisdiction, the Third Circuit has stated that four requirements must be satisfied: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original) (citing Exxon Mobil Corp., 544 U.S. at 284). The Third Circuit has explained that "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim," or whether the newly raised claims are so inextricably intertwined that a "favorable decision in federal court would require negating or reversing the state-court decision."

<u>Great W. Mining & Mineral Co.</u>, 615 F.3d at 165, 170 n.4; <u>see</u> <u>In re Madera</u>, 586 F.3d 228, 232 (3d Cir. 2009); <u>In re Knapper</u>, 407 F.3d 573, 581 (3d Cir. 2005).

With respect to the first and fourth requirements, the state court entered final judgment against Plaintiffs in the foreclosure action on May 1, 2013.  Compl., ¶¶ 44-45.  While Plaintiffs did not participate in the foreclosure action prior to the entry of judgment, Plaintiffs filed a motion to vacate judgment on June 5, 2013, which the state court subsequently denied on July 23, 2013.  <u>See</u> Berg Decl., Ex. B; <u>see</u> Compl., ¶ 46.  On October 1, 2014, Chase purchased the Residential Property at the Sheriff's Sale, <u>id.</u> at ¶ 53, and as a result, Plaintiffs filed a motion to set aside the sale of the Residential Property on December 8, 2014, <u>see</u> Berg Decl., Ex. B, which the state court denied on January 13, 2015.  <u>Id.</u> at Ex. A.  Even though they lost in the Superior Court, Plaintiffs failed to file an appeal to the Appellate Division.  <u>Id.</u> at ¶ 47.  Instead, Plaintiffs chose to file their Complaint before this Court on June 10, 2016 – almost two years after the state court entered the judgment of foreclosure, and approximately one and a half years after the state court denied Plaintiffs' motion to set aside the Sheriff's Sale.  Clearly, the foreclosure judgment was rendered well before Plaintiffs filed the Complaint here, and since Chase obtained a judgement of foreclosure and ultimately purchased the Residential Property at the Sheriff's Sale, Plaintiffs are state court losers.  <u>See</u> <u>Great W. Mining & Mineral Co.</u>, 615 F.3d at 166.

Before turning to the merits of the remaining requirements, Plaintiffs contend that the Rooker-Feldman doctrine is inapplicable because the Complaint does not seek injunctive relief, but rather, monetary damages stemming from Defendants' alleged fraudulent conduct in connection with the agreement to exchange the title of the Rental Property for a loan modification on the Residential Property.  That argument is misplaced.  The fact that Plaintiffs seek money damages instead of an outright invalidation of the state court foreclosure judgment does not

18

necessarily preclude the application of the Rooker-Feldman doctrine.  See Laychock v. Wells Fargo Home Mort., 399 Fed. Appx. 716, 718 (3d Cir. 2010) (affirming the district court's conclusion that claims for money damages, which were predicated on an alleged wrongful foreclosure, should be dismissed under the Rooker-Feldman doctrine because the requested relief required the district court to determine that the state court erroneously entered judgment); see also Zoglauer v. Smith, 182 F.3d 923 (7th Cir. 1999) (stating that "the Rooker-Feldman doctrine applies equally to claims for monetary damages and requests for injunctive relief."); Willoughby v. Zucker, Goldberg & Ackerman, LLC, No. 13-7062, 2014 WL 2711177, at *6 (D.N.J. Jun. 16, 2014) (stating that "the form of relief is not dispositive to the application of the Rooker-Feldman Doctrine.").  While examining the requested relief is useful in determining whether the new claims are barred, the focus of the Rooker-Feldman doctrine is on whether the claim complains – either explicitly or implicitly – that the plaintiff was harmed by the state court judgment, thereby inviting district court to review and reject that judgment.  See Great W. Mining & Mineral Co., 615 F.3d at 166.

Turning now to the second and forth requirements, courts in the Third Circuit have held that the Rooker-Feldman doctrine applies when a mortgagor challenges the judgment in his or her New Jersey foreclosure action.  See In re Madera, 586 F.3d 228, 232 (3rd Cir. 2009) (when confronted with a post-foreclosure federal claim for rescission of a mortgage, the Third Circuit held that the rescission claim was inextricably intertwined with the state court's foreclosure judgment, since "a favorable decision for the [plaintiff] in the federal courts would prevent the [state court] from enforcing its order to foreclose the mortgage."); In re Knapper, 407 F.3d at 581 (a federal claim for absence of personal jurisdiction in the underlying state court action is barred by Rooker-Feldman because plaintiff "can only prevail if a federal court concludes that the state

courts' default judgments were improperly obtained."); see also Great W. Mining & Mineral Co.,
615 F.3d at 170 n.4.

The Third Circuit has explained that a court must examine the gravamen of the complaint
to determine whether the "claims are in essence an attack on the state court judgment of
foreclosure." Gage v. Wells Fargo Bank, N.A., 521 Fed. Appx. 49, 51 (3d Cir. 2013) (concluding
that the plaintiff cannot evade the Rooker-Feldman doctrine, since the "complaint reveals the
nature of [the plaintiff's] claims against Wells Fargo: the bank had no right to foreclose on the
property and therefore committed 'criminal acts' by enforcing the foreclosure judgment…."); see
In re Madera, 586 F.3d at 232. In fact, courts in this district regularly hold that the Rooker-Feldman
doctrine prohibits claims in a federal action that challenge the validity of the mortgage or the right
to foreclose, since such claims effectively seek to negate or reverse the state court judgment of
foreclosure.[12]   See Dunbar v. Nationstar Mortg., LLC, No. 16-4259, 2016 WL 6804874, at *2

---

[12] In a recent unpublished opinion, the Third Circuit appears to cast doubt on the proposition that
a challenge to the validity of the mortgage is alone sufficient to deprive a district court of subject
matter jurisdiction under Rooker-Feldman. In Monclova v. U.S. Bank, N.A., which dealt with a
federal suit arising out of a state court judgment of foreclosure, the Third Circuit held that the
Rooker-Feldman doctrine barred the claim explicitly asking the district court to overrule the
judgment of foreclosure. Monclova v. U.S. Bank, N.A., --- Fed. Appx. ---, No. 16-3677, 2017 WL
118015, at *1 (3d Cir. Jan. 12, 2017). However, the court reasoned that the "complaint can also
be read to contain claims concerning harm caused by the defendants, not the state-court judgment,
which would not be barred by Rooker-Feldman," such as "those [claims] challenging the validity
of [the] mortgage and the legitimacy of the assignment…." Id. at *2. Instead, the court concluded
that those claims are more properly "barred by New Jersey's preclusion doctrines because they
could have been raised in the foreclosure proceeding." Id. The decision in Monclova seems to be
at odds with other Third Circuit decisions, including the published decision in Great W. Mining &
Mineral Co., which reiterated that the concept of "inextricably intertwined" continues to govern
the Rooker-Feldman analysis, which bars a claim that complains of harm caused by a state court
judgment and seeks to reject or negate that judgment, particularly in the foreclosure arena. Great
W. Mining & Mineral Co., 615 F.3d at 170 n.4. Nevertheless, this Court need not weigh in on that
issue because, even if Counts One, Two and Four are not barred by the Rooker-Feldman doctrine,
they are barred by the entire controversy doctrine, "New Jersey's preclusion doctrine[.]"   See
Monclova, --- Fed. Appx. ---, No. 16-3677, 2017 WL 118015, at *2.

(D.N.J. Nov. 16, 2016) (holding that the court lacked subject matter jurisdiction, since "Rooker-Feldman prohibits the Court from exercising jurisdiction over Plaintiff's statutory and common law claims challenging the validity of the loan agreement and Defendants' right to foreclose."); Lewis v. Pennymac Corp., No. 16-1514, 2016 WL 2901707, at *3 (D.N.J. May 18, 2016) (concluding that the court did not have jurisdiction, under the Rooker-Feldman doctrine, because "[t]he gravamen of Plaintiff's Complaint is that Defendants had no right or standing to foreclose on the Property."); Siljee v. Atl. Stewardship Bank, No. 15-1762, 2016 WL 2770806, at *5 (D.N.J. May 12, 2016) (holding that the Rooker-Feldman doctrine barred a breach of contract claim because "[i]ts essence… is that the mortgage is invalid or that Atlantic had no standing to assert it.").

In the instant matter, Plaintiffs go to great lengths to point out that the Complaint does not expressly seek an invalidation of the state court foreclosure judgment.  While Plaintiffs characterize their harm as relating to Defendants' conduct, the gravamen of Counts One (breach of contract), Two (violation of the NJCFA) and Four (fraudulent misrepresentation) seek to attack the state court foreclosure judgment, since Plaintiffs are impliedly challenging the validity of the mortgage and right to foreclose on the Residential Property.  Indeed, those Counts rest upon the same factual allegations.  Plaintiffs allege that they entered into an agreement with Chase modifying the terms and conditions of their mortgage on the Residential Property to restructure the mortgage so that Plaintiffs could afford to make payments; but, Chase proceeded to file a foreclosure action.  Plaintiffs further claim that both Chase and M&T engaged in dilatory tactics and made fraudulent or misleading statements to Plaintiffs to obfuscate their intention to foreclose on the Residential Property.  With respect to Count One, assuming the existence of a valid loan modification, the breach of contract claim presumes that the state court should not have entered a

judgment of foreclosure, because Plaintiffs complain that the terms and conditions of the underlying mortgage were altered by a subsequent loan modification agreement that occurred prior to the institution of the foreclosure complaint and entry of foreclosure judgment. See Siljee, 2016 WL 2770806, at *5. Clearly, Count One is so inextricably intertwined with the foreclosure judgment that a favorable decision in this Court would require a finding that the state court was wrong in entering a foreclosure judgment for Chase. See Great W. Mining & Mineral Co., 615 F.3d at 165, 170 n.4.

In their NJCFA claim in Count Two, Plaintiffs' allegation of wrongdoing focuses solely on Chase's conduct that occurred before the foreclosure judgment was entered in 2013. But, at the same time, Plaintiffs include M&T as a participant in that alleged fraud that occurred during the mortgage modification process. See, e.g., Compl., ¶ 73 (alleging that "Chase and M&T Bank never intended to provide Plaintiffs with a mortgage modification and Chase never intended to honor its agreement with Plaintiffs…."). Those allegations against M&T are inconsistent with Plaintiffs' own allegation regarding when M&T began servicing Plaintiffs' mortgage, i.e., in March 2014, which was after the state court foreclosure judgment. Thus, the allegations of fraud cannot plausibly be asserted against M&T in Count Two.[13] As to Chase, Plaintiffs allege that it engaged in fraudulent conduct throughout the loan modification process, such as making false representations to Plaintiffs about the status of their application, in an attempt to mislead Plaintiffs into thinking that Chase would not pursue foreclosure. Based on those allegations, it is clear that Plaintiffs seek to undermine Chase's right to foreclose upon the Residential Property, since the

---

[13] To the extent that Plaintiffs wish to assert a separate NJCFA claim against the M&T Defendants for their actions that occurred after the judgment of foreclosure, the Court grants Plaintiffs leave to amend the pleadings.

crux of Plaintiffs' claim is that Chase obtained the foreclosure judgment through fraud.  See Leisure Technology-Northeast, Inc. v. Klingbeil Holding Co., 137 N.J. Super. 353, 356 (App. Div. 1975) ("The defense of unclean hands is cognizable in a foreclosure action.").  The Rooker-Feldman doctrine prohibits this Court from making precisely the kind of findings called for by Plaintiffs, which would invalidate the bases of the state court judgment.  Similarly, Plaintiffs' claim against Chase for fraudulent misrepresentation in Count Four must fail for the same reason as Plaintiffs' NJCFA claim.  Plaintiffs allege that Chase and its representatives, such as Rieger, made false statements to Plaintiffs in connection with the mortgage modification application, and that Chase purposefully neglected to tell Plaintiffs that it had filed a foreclosure action in the New Jersey Superior Court.  In effect, Plaintiffs ask this Court to find that Chase should not have been entitled to the foreclosure judgment in state court, because Chase engaged in a pattern of fraud prior to that judgment.  Accordingly, the Court finds that Plaintiffs' claims in Counts Two and Four are inextricably intertwined with the state court judgment.

With respect to Count Three, Plaintiffs allege that the M&T Defendants did not provide Plaintiffs with loss mitigation options prior to the sale of the Residential Property, and that the M&T Defendants scheduled and conducted the Sheriff's Sale, even though Plaintiffs had a loss mitigation application pending with Bayview.  Unlike the other Counts, Plaintiffs' RESPA claim stands on different footing, since it does not challenge either the validity of the underlying mortgage or Chase's right to foreclose.  See Great W. Mining & Mineral Co., 615 F.3d at 166 (stating that the Rooker-Feldman doctrine does not bar claims where the source of the injury is the defendant's action, not the state court judgment); see also Siljee v. Atl. Stewardship Bank, 2016 WL 2770806, at *5 (concluding that the Rooker-Feldman doctrine did not bar the RESPA claim because "noncompliance with RESPA does not implicate the validity of the mortgage or Atlantic's

23

standing.  It is not inconsistent with the existence of a final judgment of foreclosure.").  Indeed, Plaintiffs allege that the conduct of the M&T Defendants occurred after the judgment of foreclosure was entered.  Accordingly, Plaintiffs' RESPA claim is not barred under the Rooker-Feldman doctrine, because the source of injury is not the foreclosure action, nor is the claim inextricably intertwined with the state court judgment.

### 2.      The New Jersey Entire Controversy Doctrine

As the Court has previously noted, to the extent that the Rooker-Feldman doctrine does not divest this Court of subject matter jurisdiction, the New Jersey entire controversy doctrine operates to bar Counts One, Two and Four.  The Third Circuit has described the entire controversy doctrine as "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit."[14]  Chavez v. Dole Food Co., Inc., 836 F.3d 205, 229 n.130 (3d Cir. 2016) (internal quotation marks and citation omitted); see Ricketti v. Barry, 775 F.3d 611, 613 (3d Cir. 2015).  The doctrine "requires a party to bring in one action all affirmative claims that [it] might have against another party, including counterclaims and cross-claims, and to join in that action all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts."  Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 885 (3d Cir. 1997) (internal quotation marks and citation omitted) (alteration in original); see N.J. Ct. R. 4:30A ("Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine....").

---

[14] I note that the Bankruptcy Judge did not consider the issue of the Entire Controversy Doctrine.

With respect to foreclosure actions, the entire controversy doctrine does not bar a subsequent claim unless it is germane.  See N.J. Ct. R. 4:64-5.  "Claims are considered to be germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action."  Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp., 446 Fed. Appx. 469, 472 (3d Cir. 2011); see Leisure Technology-Northeast, Inc., 137 N.J. Super. at 349 ("The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action.").  Courts in this district have explained that "any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure."  Zebrowski v. Wells Fargo Bank, N.A., No. 07-5236, 2010 WL 2595237, at *6 (D.N.J. Jun. 21, 2010) (internal quotation marks and citation omitted); see also Fraize v. Gov't Nat'l Mortg. Ass'n, No. 14-7152, 2016 WL 958392, at *9 (D.N.J. Mar. 14, 2016) (holding that, "[b]ecause the claims would have been 'germane' in the sense that they arose from the relevant mortgage transaction, they are now barred by the entire controversy doctrine.").

In the instant matter, the entire controversy doctrine bars Counts One, Two and Four because those claims arise out of the mortgage transaction that was the basis of the New Jersey Superior Court foreclosure action and judgment.[15]  The crucial point is that Plaintiffs had the opportunity to raise these claims and counterclaims in the state court foreclosure action, but failed to do so.  Indeed, the state court noted that Plaintiffs had proper notice of the foreclosure action

---

[15] With respect to Count Two, the Court again notes that the Entire Controversy doctrine only bars conduct that predates the judgment of foreclosure in state court.

and consciously chose not to participate until after the foreclosure judgment was entered. Relatedly, Plaintiffs could have filed an appeal with the Appellate Division to overturn the foreclosure judgment and set aside the sale of the residence, but they chose not to do so.  Indeed, the fact that Plaintiffs did not utilize the opportunity to fully litigate their claims in the state court action is the very reason why the entire controversy doctrine applies.  Thus, Plaintiffs have failed to establish that they were not afforded a full and fair opportunity to litigate their claims.  See Heir v. Delaware River Port Auth., 218 F. Supp. 2d 627, 636 (D.N.J. 2002) ("Application of the entire controversy doctrine requires equality of forum, that is, the first forum must have been able to provide all parties with the same full and fair opportunity to litigate the issues and with the same remedial opportunities as the second forum.") (internal quotation marks and citation omitted); see Dukes v. Lancer Ins. Co., 390 Fed. Appx. 159, 163 (3d Cir. 2010).

Plaintiffs have also failed to establish that the claims raised in this matter were unknown or unaccrued during the foreclosure proceeding, particularly since the alleged wrongdoing underlying Counts One, Two and Four predated the foreclosure judgment.  See In re Mullarkey, 536 F.3d at 229 ("The entire controversy doctrine does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action.") (internal quotation marks and citation omitted).  Indeed, Plaintiffs already raised most of these issues, albeit not claims, to the state court in both their motion to vacate the foreclosure judgment and motion to set aside the sale of the Residential Property.  See Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 323 (1995) ("In essence, it is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation.").  For instance, in their motion to vacate judgment, Plaintiffs asserted that Chase "acted in an unfair and deceptive manner, withholding foreclosure intent from

[Plaintiffs]," and that Chase representatives made fraudulent statements in connection with Plaintiffs' loan modification application, thereby preventing Plaintiffs "from seeking available alternatives to foreclosure."  Trainor Decl., Ex. C.  Plaintiffs even attempted to assert a claim that Chase violated the "New Jersey Consumer Act" in their proposed answer.  Id.  In connection with Plaintiffs' motion to set aside the Sheriff's Sale, the state court expressly held that there was insufficient evidence that Plaintiffs "were coerced into loan modification negotiations, or that this was done fraudulently."  Id.  Obviously, Plaintiffs were aware of the core set of factual allegations that form the basis of their claims in the instant Complaint.[16]

Nevertheless, with respect to Count Three, Plaintiffs' RESPA claim does not arise out of the mortgage transaction that was the subject of the state foreclosure action; rather, Plaintiffs accuse the M&T Defendants of violating RESPA after the judgment of foreclosure occurred, but before the sale of the Residential Property.   In particular, Plaintiffs' claim against the M&T Defendants arise from Plaintiffs' submission of a loss mitigation application and the scheduling and conducting of the Sheriff's Sale.   Clearly, the RESPA claim was unknown and unaccrued when the state court entered the uncontested foreclosure judgment.   In re Mullarkey, 536 F.3d at 229.  As a result, Plaintiffs did not have an opportunity to assert the RESPA claim in the state court action based on that conduct.   See Heir, 218 F. Supp. 2d at 636; see also Great W. Mining & Mineral Co., 882 F. Supp. 2d at 761 (stating that "the entire controversy doctrine should not be applied when "joinder would result in significant unfairness [to the litigants] or jeopardy to a clear presentation of the issues and just result.") (internal quotation marks and citation omitted)

---

[16] M&T did not take over the servicing of the mortgage on the Residential Property until after the motion to vacate judgment was denied.

(alteration in original).  Accordingly, the entire controversy doctrine does not bar the RESPA claim against the M&T Defendants in Count Three.[17]

### 3.    Failure to State a Claim

In their reply brief, the M&T Defendants raised for the first time the argument that Court Three should be dismissed for failure to state a claim under 12 C.F.R. § 1024.41(g), specifically contending that Plaintiffs have failed to allege that they submitted a complete loss mitigation application to Defendants.[18]  The M&T Defendants further contend that, "[w]hile Plaintiffs allege that they submitted a loss mitigation application to Defendants, they fail to attach any of the documents they submitted as exhibits to the complaint or to at least specify which documents they submitted."  Defs.' Reply Br., Dkt. No. 10, at 15.

RESPA is "a consumer protection statute that regulates the real estate settlement process." Jones v. ABN Amro Mortg. Grp., Inc., 606 F.3d 119, 124 (3d Cir. 2010).  Congress enacted RESPA to "insure that customers throughout the Nation are provided with greater and more timely

---

[17] The M&T Defendants also argue that Count Three is barred by the doctrine of res judicata, but that argument must fail for the same reason that the entire controversy doctrine argument failed. Res judicata attaches where there has been: "(1) a final judgment on the merits in a previous lawsuit involving: (2) the same parties or their privies; and (3) a subsequent action based on the same cause of action."  Simoni v. Luciani, 872 F. Supp. 2d 382, 388 (D.N.J. 2012).  Here, Plaintiffs did not bring a RESPA claim in the state court foreclosure action against any of the Defendants, therefore, there can be no final judgment on the merits on that claim in the previous lawsuit.  However, the doctrine also "applies not only to claims brought in a previous lawsuit, but also to claims that could have been brought in that suit."  Id.  As discussed supra, because the alleged wrongdoing in Count Three occurred after the foreclosure judgment, Plaintiffs could not have known that the RESPA claim accrued at the time of the foreclosure proceeding.  Accordingly, res judicata does not bar Count Three.

[18] In their original motion, M&T and Bayview did not argue that Count Three should be dismissed for failure to state a claim, and as such, Plaintiffs did not respond to that argument in their opposition brief.  While Defendants raised this new argument in their reply brief, Plaintiffs did not, for example, file a motion to strike this new argument as improper, or, in the alternative, request leave to file a sur-reply.  Nevertheless, as discussed infra, Defendants' argument fails.

information on the nature and costs of the settlement process and are protected from... certain abusive practices." 12 U.S.C. § 2601(a). In this matter, Plaintiffs have specifically alleged a violation of 12 C.F.R. § 1024.41(g), which prohibits a foreclosure sale under certain circumstances:

> (g) Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
>> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>>
>> (2) The borrower rejects all loss mitigation options offered by the servicer; or
>>
>> (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g); see 12 U.S.C. § 2605(f) (providing a private cause of action for violations of RESPA). Stated differently, 12 C.F.R. § 1024.4 prohibits a servicer from conducting a foreclosure sale after the borrower has submitted a loss mitigation application, unless that servicer has provided the borrower with notice that he or she is not eligible for modification and appeal is not available or has been denied. See Wiggins v. Hudson City Sav. Bank, No. 15-8898, 2016 WL 5952739, at *1 n.2 (D.N.J. Oct. 13, 2016). A "loss mitigation application" is defined as "an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option." 12 C.F.R. § 1024.31; see 12 C.F.R. § 1024.41(b)(1) (stating that a "complete loss mitigation application" is "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. A

servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.").

In the instant matter, the M&T Defendants only challenge the sufficiency of Plaintiffs' allegations in connection with the submission of their loss mitigation application.   In their Complaint, Plaintiffs specifically allege that, "in March, 2014, they submitted a loss mitigation application as that term is defined in 12 CFR §10241.31 [sic] to Defendant M&T's servicing agent, Defendant Bayview Loan Servicing."   Compl., ¶ 77.   Indeed, Plaintiffs further allege that they "complied with any and all requests for additional information from Defendant M&T and/or Defendant Bayview in connection with their loss mitigation application."   Although Plaintiffs do not expressly use the phrase "complete loss mitigation application" in their Complaint, when construing the pleadings in the light most favorable to Plaintiffs, it is clear that Plaintiffs have adequately alleged that they submitted a complete loss mitigation application to Bayview in March 2014, which was approximately seven months before the Sheriff's Sale.   Taking those allegations as true, Plaintiffs have sufficiently alleged that they submitted a proper loss mitigation application. Furthermore, while Defendants maintain that Plaintiffs should have attached their loss mitigation application to the Complaint, or specifically allege which documents they submitted to Bayview, the M&T Defendants have failed to provide any source of authority imposing heightened pleading requirements on Plaintiffs' RESPA claim.   To the contrary, Defendants' argument is inconsistent with the liberal federal pleading standards, which only require that Plaintiffs plausibly allege a claim for relief.   See Covington, 710 F.3d at 118 ("[A] claimant does not have to set out in detail the facts upon which he bases his claim.   The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.").   The M&T Defendants' motion should more appropriately be brought as a summary

judgment motion with the appropriate exhibits attached demonstrating Plaintiffs' alleged failure to submit a complete loss mitigation application. The M&T Defendants' motion to dismiss Count Three for failure to state a claim is denied.

## IV.    CONCLUSION

For the reasons set forth above, Chase's motion to dismiss is **GRANTED**, since Counts One, Two and Four are barred by the Rooker-Feldman doctrine. To the extent that those claims are not barred under that doctrine, those Counts are barred by the entire controversy doctrine. Any claim against M&T, as plead, in Count Two is dismissed, but Plaintiffs are given leave to file an Amended Complaint to assert an NJCFA claim against M&T and/or Bayview regarding post-foreclosure judgment conduct within 15 days from the date of the Order accompanying this Opinion. Finally, the M&T Defendants' motion to dismiss Count Three is **DENIED**.

DATED: February 2, 2017

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge